Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 CR 661 | **DATE** | 6/20/03 |
| **CASE TITLE** | USA vs. Wayne Stephens | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the Court grants the government's motion to vacate the order of 5/8/03. The Government's motion to supplement the record and for leave to file the jury questionnaires under seal (45-1, 45-2) is granted.

(11) ■ [For further detail see

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | date docketed | 49 |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| OR | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | Case No. 02 CR 661 |
| ) | |
| WAYNE STEPHENS ) | |

**MEMORANDUM OPINION AND ORDER**

DOCKETED
JUN 2 4 2003

MATTHEW F. KENNELLY, District Judge:

The government has moved to vacate the Court's order of May 8, 2003, which directed the government to explain the basis on which it had exercised its peremptory challenges in this case. *See generally Batson v. Kentucky,* 476 U.S. 79 (1986) (government's use of peremptory challenges based on race is unconstitutional). The May 8 order is reprinted here in its entirety:

> The defendant in this case, who is African-American, was tried and convicted of wire fraud. The jury that tried him consisted of seven Caucasian men, [four] Caucasian women, and one Hispanic woman (the alternate jurors were a Caucasian man and a Caucasian woman). By itself this is not indicative of any violation of the defendant's equal protection rights or those of any of the jurors. The manner in which the peremptory challenges were exercised, however, presents an issue which the defendant did not raise at trial or in his post-trial motion, but which the Court should have raised on its own motion at the time. We now correct this error on our part and raise the issue *sua sponte* for the reasons stated below.
>
> The jury panel consisted of forty members. Of these, eighteen were Caucasian men, thirteen were Caucasian women, one was an African-American man, three were African-American women, two were Hispanic-American men, two were Hispanic-American women, and one was an Asian-American man. Nine of the panel members were excused for hardship or cause: five Caucasian men, two Caucasian women, and one African-American man. This left a panel consisting of thirteen Caucasian men, eleven Caucasian women, three African-American women, two Hispanic-American men, two Hispanic-American women, and one Asian-American man. The government was given seven peremptory challenges and the defendant eleven. The government used only six of its peremptory challenges, using all of them to exclude minority jurors: two African-American women, two Hispanic-American men, one Hispanic-American woman, and one

Asian-American man. The defendant excluded the remaining African-American woman as well as five Caucasian men and four Caucasian women (the defendant also struck one of the same Hispanic-American women that the government had stricken).

At the time of jury selection, the Court realized that the government had used all of its peremptory challenges to exclude minorities and obviously was aware that only one minority group member remained on the jury. The pattern would have been sufficient to cause the Court to require the government to justify its challenges if we had been called upon to do so. We left it to defense counsel to raise the issue. He did not do so. At the time, the Court assumed that counsel had a strategic reason for not raising the issue and thus did not raise it on our own motion.

This represented faulty thinking on the Court's part, for at least two reasons. First, no strategy can justify discriminatory use of peremptory challenges (though we hasten to add that we are making no finding that this is what occurred); a defendant who exercises peremptory challenges in a racially discriminatory manner violates the jurors' equal protection rights no matter how good a reason he has. *See Georgia v. McCollum*, 505 U.S. 42 (1992). Second, the defendant's use of his own peremptory challenges plainly does not reflect a strategy of excluding minorities.

The Court should have raised the issue at the time of the jury selection. We have the authority to raise it now, on our own motion, for several reasons. First, Federal Rule of Criminal Procedure 52(b) provides that "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention." Second, the interests implicated by discriminatory use of peremptory challenges are not only those of the parties; they also involve the rights of the prospective jurors and the integrity of the judicial process. *See generally Powers v. Ohio*, 499 U.S. 400 (1991). The Court is as well-placed as any of other participants in the case to raise these interests.

For these reasons, the Court directs the government to submit, on or before 5/22/03, a memorandum justifying its exercise of each of its peremptory challenges in the case. The matter is set for a status hearing on 5/29/03 at 9:30 a.m. Defense counsel is directed to provide a copy of this order to the defendant and to certify to the Court, in writing, that he has done so.

*United States v. Stephens*, No. 02 CR 661, minute order dated 5/8/03.

Before discussing the merits of the government's motion to vacate, we correct two scrivener's errors in the May 8 order. First, the order misstated that there were seven Caucasian women on the jury, when in fact there were four. Second, the order should have said that the

government struck an Asian-American *woman* (juror #10), not an Asian-American *man*. But contrary to the government's view, the Court believes that juror #1 (whom both sides struck) was Hispanic-American, though it is conceivable that further factual development of the record might be required in that regard.

On to the government's motion. In the May 8 order, the Court found that the government's exercise of its peremptory challenges might constitute plain error, thus permitting the issue to be raised even though defendant had not. The government argues that it was improper for the Court to raise the *Batson* issue *sua sponte*; that we lacked authority to raise the issue because the time for filing a motion for new trial had passed; and that there was no plain error in any event, as there was no basis to find a *prima facie* case of discrimination requiring the government to explain its challenges.

The Court disagrees with the government's contention that a trial judge may not raise a *Batson* issue on his own in the absence of a defense objection. The fact that we have an adversary system does not mean that the trial judge serves as a ministerial observer who speaks only when spoken to. In some contexts the judge is actually *obligated* to raise an issue when he sees it even without being asked to do so; for example, the question of the defendant's competence. *See Pate v. Robinson,* 383 U.S. 375, 385 (1966); *Jermyn v. Horn,* 266 F.2d 257, 283 (3d Cir. 2001); *Johnson v. Norton,* 249 F.3d 20, 26 (1st Cir. 2001); *Mata v. Johnson,* 210 F.3d 324, 329 (5th Cir. 2000); *see also* 18 U.S.C. § 4241(a). In other contexts the judge's ability to act on his or her own is provided by Rule; for example, Federal Rule of Evidence 614 permits a court to call witnesses on its own motion and also to question witnesses called by the parties. Fed. R. Evid. 614(a) & (b).

3

We can fairly assume that no such obligation or Rule exists in the *Batson* context. *See Dias v. Sky Chefs, Inc.*, 948 F.2d 532, 535 (9th Cir. 1991); *Clark v. Newport News Shipbuilding & Dry Dock Co.*, 937 F.2d 934, 939 (4th Cir. 1991). But that said, a trial judge is not, and is not required to be, a silent bystander to the proceedings. For example, it is not particularly unusual for a judge to observe a juror nodding off during a trial; must the judge remain silent when this occurs, waiting for a party to raise the issue? If the trial judge observes that the defendant's counsel is sleeping, or exhibiting signs of intoxication, must he wait for the prosecutor, or the defendant himself, to raise the issue? We think not. A trial judge's duty and authority to supervise the proceedings includes the authority to speak up, at the appropriate time and place, to raise an issue regarding the fair conduct of the proceedings. That does not mean that the judge can or should act as a second advocate for one side or the other, or that he should inject himself at the drop of a hat. But at some threshold, a trial judge may properly intercede in the process to raise an issue implicating the public's interest in ensuring that its system of justice operates fairly and justly.

This Court believes that these considerations apply with particular force in the *Batson* context. If a prosecutor excused an African-American juror and stated that he was doing so because he did not believe that African-Americans could be fair in the particular case, yet the defendant did not object, could it seriously be maintained that the trial judge was powerless to raise the issue on his or her own? When a party exercises a peremptory challenge, action by the Court is required to excuse the juror. Indeed, in cases involving challenges to strikes by private parties, the trial judge's extensive participation in the jury selection process and the judge's act of excusing the juror are part of the "state action" that allows the party's strike to be challenged as

discriminatory. *See Edmondson v. Leesville Concrete Co.,* 500 U.S. 614, 623-24 (1991). "Without the direct and indispensable participation of the judge . . . the peremptory challenge system would serve no purpose. By enforcing a discriminatory peremptory challenge, the court 'has not only made itself a party to the [biased act], but has elected to place its power, property and prestige behind the [alleged] discrimination.'" *Id.* at 624 (quoting *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 725 (1961) (alterations in original)).

Moreover, when a juror is excused because of his or her race or other prohibited criterion, "[t]he message it sends to all those in the courtroom, and all those who may later learn of the discriminatory act, is that certain individuals, for no reason other than [race], are presumed unqualified . . . to decide important questions upon which reasonable persons could disagree." *J.E.B. v. Alabama,* 511 U.S. 127, 142 (1994). As Justice Kennedy has aptly put it, "[r]acial bias mars the integrity of the judicial system and prevents the idea of democratic government from becoming a reality." *Edmondson,* 500 U.S. at 628. "[R]acial discrimination in the qualification or selection of jurors offends the dignity of persons and the integrity of the courts." *Powers v. Ohio,* 499 U.S. 400, 402 (1991). The Supreme Court has emphasized that prospective jurors "have the right not to be excluded summarily because of discriminatory and stereotypical presumptions that reflect and reinforce patterns of historical discrimination. *J.E.B.,* 511 U.S. at 141-42. If a judge is entirely powerless to raise an issue concerning a potential violation of a prospective juror's rights unless a litigant does so first, then the prospective juror's rights are at the mercy of the particular litigant's strategic interests and the skill and perception of his or her counsel.

Having said all of this, we concede that there is a right way and a wrong way to do things,

5

and we are persuaded by the government's submission that we interceded at the wrong time and in the wrong manner. Specifically, we agree with the government that it was improper for the Court to raise the issue when it did – after the time for filing a motion for new trial had already run out – because at that point we lacked the authority to order a new trial. This is made clear by *Carlisle v. United States,* 517 U.S. 416 (1996), in which the Supreme Court held that a trial judge lacks the authority to enter a judgment of acquittal *sua sponte* after the time for making a motion for judgment of acquittal has expired. The Court said that a judge's authority to grant a judgment of acquittal is granted by, and therefore limited by, the Rules of Criminal Procedure, which require a motion for judgment of acquittal to be made within a particular time after the jury is excused and preclude extension of that time after it has run out. *See* Fed. R. Crim. P. 29(c)(1), 45(b)(2). Rule 33, which authorizes the granting of a new trial, contains similar limitations. *See* Fed. R. Crim. P. 33(b)(2), 45(b)(2). Thus as in *Carlisle,* we lacked the authority to raise the issue once the time for Stephens to file a motion for new trial expired, as it had by May 8.

*Carlisle,* however, reveals that a judge who perceives an error in the trial is not powerless to act. In a footnote to his opinion for the Court, Justice Scalia indicated that a trial judge "who wants to set aside a verdict" can "invite a motion for that during the 7-day period, or (if defendant's counsel is unavailable), . . . extend the 7-day period, *sua sponte,* in order to invite a motion later." *Carlisle,* 517 U.S. at 423 n.3.[1] Consistent with this suggestion, the Court believes that rather than ordering an explanation for a peremptory strike *sua sponte,* the appropriate way to raise the point is to ask opposing counsel whether he or she intends to challenge the strike (or,

---

[1] This Court notes, with some chagrin, that we appear to have dashed the Supreme Court's "hope and belief that no . . . district judge exists" who "lacks the wit" to invite a party to make a motion within the appropriate time. *Carlisle,* 517 U.S. at 423 n.3.

6

failing that, to invite a new trial motion within the appropriate time). That is not what we did here, but in retrospect it is what we ought to have done.

Two Seventh Circuit decisions give us pause, but ultimately do not preclude a trial judge from putting the *Batson* issue on the table. In *Doe v. Burnham*, 6 F.3d 476 (7th Cir. 1993), the court noted that the district court had disallowed a peremptory challenge even though no *Batson* objection had been made. Though it reversed the trial court's judgment on other grounds, the court stated that "a court should at least wait for an objection before intervening in the process of jury selection to set aside a peremptory challenge." *Id.* at 481. *Doe*, however, preceded the Supreme Court's decision in *J.E.B.*, discussed earlier, which identified the prospective juror's independent right not to be the object of discrimination, and, in this Court's view, established a public-policy rationale supporting the judge's intervention in the process when the necessary factual predicate appears to exist. And in any event, nothing in *Doe* precludes a trial judge from asking a party whether he intends to raise an objection to an opponent's challenge, the process that we have suggested.

The government also cites the Seventh Circuit's recent decision in *Aki-Khuam v. Davis*, 328 F.3d 366 (7th Cir. 2003), in which the court approvingly quoted the district court's statement that "the voir dire 'process is still an adversarial one and the case law, including *Batson* and the cases that followed it, make it clear that *Batson* issues must be raised. *Batson* is not self-executing.'" *Id.* at 372 (quoting *Aki-Khuam v. Davis*, 203 F. Supp. 2d 1001, 1019 (N.D. Ind. 2002)). The issue in *Aki-Khuam* concerned a state trial judge's disallowance of several peremptory challenges made by a defendant in a capital murder case. But there the Seventh Circuit and the district court addressed a particular judge's practice of requiring on-the-record

7

justification for *all* peremptory challenges, irrespective of any *prima facie* showing of a discriminatory pattern. *See id.* at 367; 203 F. Supp. 2d at 1015. That is not what is at issue here; this Court's May 8 ruling sought justification for peremptory challenges only after perceiving what we believed to be *prima facie* evidence of discrimination. And again, *Carlisle* makes it clear that a district judge who perceives a significant error in a criminal trial does not lack the authority to intervene, at least to the extent of inviting an objection or appropriate motion.

Having concluded that we lacked the authority to order a new trial on *Batson* grounds after defendant's time for filing a new trial motion had expired without that issue being raised, the Court vacates the order of May 8, 2003. For this reason, we need not address the government's contention that a *prima facie* case of discrimination existed. As in *Carlisle*, we note that there are "legal avenues still open to [Stephens] to challenge" the government's use of its peremptory challenges, including "a postconviction motion, under 28 U.S.C. §2255," seeking to vacate his conviction. *Carlisle*, 517 U.S. at 436. The appropriate time to address whether a *prima facie* case of discrimination existed will come if and when Stephens files such a motion.

## Conclusion

For the reasons stated above, the Court grants the government's motion to vacate our order of May 8, 2003 [docket item 39-1]. The government's motion to supplement the record and for leave to file the jury questionnaires under seal [item 45-1, 45-2] is granted.

MATTHEW F. KENNELLY
United States District Judge

Date: June 20, 2003